UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANILA KOMAROV, Petitioner, v. CHRISTOPHER J. LAROSE, Warden, Otay Mesa Detention Center, Respondent. | Case No.: 26cv3530-LL-SBC **ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241** [ECF No. 8] |

Before the Court is Petitioner Danila Komarov's Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 8 ("Pet."). The government filed a Response [ECF No. 9], and Mr. Komarov filed a Traverse [ECF No. 12]. For the reasons set forth below, the Court **GRANTS** the Amended Petition.

## I. BACKGROUND

Mr. Komarov is a citizen of Russia who has been detained at the Otay Mesa Detention Center since he entered the United States on November 18, 2025 seeking asylum. ECF No. 8-1, Declaration of Danila Komarov ("Komarov Decl."), ¶¶ 1, 6; ECF No. 9-1 at 2–5, 7. His application for asylum was denied in May 2026 and he was ordered removed to Russia. Komarov Decl. ¶ 4. Mr. Komarov filed an appeal to the Board of Immigration

/ / /

Appeals, which remains pending, and intends to appeal to the Ninth Circuit Court of Appeals if he does not prevail. *Id.* ¶ 5.

On July 2, 2026, Mr. Komarov filed the instant Amended Petition, alleging that his prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment. Pet. at 3. He seeks a writ of habeas corpus directing the government to release him, or alternatively, to provide him with a bond hearing in district court or before an immigration judge at which the government bears the burden of justifying continued detention. *Id.* at 18.

## II. LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## III. DISCUSSION

### A. Jurisdiction

The government argues that as a threshold matter, Mr. Komarov's claims and requested relief are jurisdictionally barred under 8 U.S.C. § 1252(g). ECF No. 9 at 3–4.

Section 1252(g) states that "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

The government argues that Mr. Komarov's claims are barred because they arise "from the decision or action by the [government] to commence proceedings," which removes district court jurisdiction. ECF No. 9 at 4 (alteration in original).

The Court finds § 1252(g) does not bar its jurisdiction over Mr. Komarov's claims. The Supreme Court has explained that § 1252(g) does not bar jurisdiction for the "universe of deportation claims" but instead "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *2 (9th Cir. Aug. 27, 2025) ("The Supreme Court has instructed that we should read § 1252(g) narrowly."). The Supreme Court later reiterated this narrow application of § 1252(g): "We did not interpret this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted). Mr. Komarov is not challenging the commencement of removal proceedings but is instead claiming a lack of legal authority to detain him for a prolonged time without a bond hearing during proceedings. *See Ibarra-Perez*, 2025 WL 2461663, at *2 (noting that a claim based on a lack of legal authority to execute a removal order due to a violation of a court order, the Constitution, INA, or international law, does not challenge the decision or action to execute a removal order). Therefore, § 1252(g) does not limit the Court's jurisdiction in this matter.

**B. Fifth Amendment Due Process Clause**

Mr. Komarov argues that his prolonged detention without a bond hearing violates the Fifth Amendment's Due Process Clause. Pet. at 3.

The government contends there is no due process violation because Mr. Komarov is detained pursuant to § 1225(b)(1), which mandates detention through the conclusion of the removal process, and that is all the process he will receive. ECF No. 9 at 4–10. The

government also argues that Mr. Komarov's detention is not unconstitutionally prolonged. *Id.*

The Due Process Clause of the Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "At the same time, however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* The Ninth Circuit has questioned the constitutionality of certain immigration detention statutes, including § 1225(b):

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government. "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S. Ct. 2095, 95 L.Ed.2d 697 (1987). Civil detention violates due process outside of "certain special and narrow nonpunitive circumstances." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, 150 L.Ed.2d 653 (2001) (internal quotation marks and citation omitted).

*Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) (alteration in original).

The Court agrees with those courts that have found a noncitizen detained under § 1225(b) for a prolonged period without an individualized bond hearing may assert a constitutional right to due process. *See Sadeqi v. LaRose*, 809 F. Supp. 3d 1090, 1093 (S.D. Cal. 2025) ("This Court agrees with the majority position that a petitioner detained under Section 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing."); *Maksin v. Warden, Golden State Annex*, No. 1:25-CV-00955-SKO (HC), 2025 WL 2879328, at *3 (E.D. Cal. Oct. 9, 2025) ("Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause." (collecting cases)); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-

SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" (quoting *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *report and recommendation adopted,* No. 18-CV-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019))); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116–17 (W.D. Wash. 2019).

The government relies on two cases to support its argument that § 1225(b)(1) and its provision for mandatory detention provides all the process that Petitioner is due, but the Court is not persuaded. ECF No. 9 at 6–8 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), and *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953)). In *Thuraissigiam*, the habeas petitioner argued that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 violated "his right to due process by precluding judicial review of his allegedly flawed credible-fear proceeding." *Thuraissigiam*, 591 U.S. at 138. The Supreme Court found that the petitioner, as an applicant for admission, was provided "the right to a determination whether he had a significant possibility of establishing eligibility for asylum" pursuant to § 1225(b), and that he had "only those rights regarding admission that Congress has provided by statute." *Id.* at 140 (internal quotation marks and brackets omitted) (quoting §§ 1225(b)(1)(B)(ii), (v)). The Court finds *Thuraissigiam* addressed a noncitizen's right to challenge *admission*, not detention. *See, e.g.*, *Sadeqi*, 809 F. Supp. 3d at 1093 ("This Court likewise agrees with those district courts that interpret *Thuraissigiam* as circumscribing an arriving alien's due process rights to *admission*, rather than limiting that person's ability to challenge *detention*."); *Aviles-Mena v. Kaiser*, No. 25-CV-06783-RFL, 2025 WL 2578215, at *4

(N.D. Cal. Sep. 5, 2025) (finding *Thuraissigiam* inapplicable to cases challenging detention).

The Court finds *Mezei* is also distinguishable. *Mezei* involved a noncitizen who had been "permanently excluded from the United States on security grounds but stranded in his temporary haven on Ellis Island because other countries [would] not take him back." *Mezei*, 345 U.S. at 207. The Supreme Court recognized Mezei's exclusion for security reasons as different from noncitizens who may be released from detention on bond. *Id.* at 216 ("An exclusion proceeding grounded on danger to the national security, however, presents different considerations; neither the rationale nor the statutory authority for such release exists."). The facts are significantly different because Mr. Komarov has not been excluded as a security risk and does not have a final order of removal. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 413–14 (6th Cir. 2003) ("[T]he *Mezei* Court explicitly grounded its decision in the special circumstances of a national emergency and the determination by the Attorney General that Mezei presented a threat to national security."); *Kydyrali*, 499 F. Supp. 3d at 772 (finding *Mezei* inapposite to issue of whether prolonged detention without a bond hearing violates due process).

Mr. Komarov contends that applying any of the various factor tests used in this circuit shows that his detention violates his due process rights. Pet. at 8–9; ECF No. 12 at 5–7. The government argues that applying the six-factor balancing test articulated in *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019), shows that Mr. Komarov's detention is not unconstitutional at this stage. ECF No. 9 at 8–9.

Courts in the Ninth Circuit have used various factor tests to determine whether due process requires a bond hearing in immigration detention cases, including the *Banda* test. In *Banda*, the court considered the following factors to determine whether prolonged mandatory detention under § 1225(b) in a particular case violates the Due Process Clause: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood

that the removal proceedings will result in a final order of removal." *Banda*, 385 F. Supp. 3d at 1118 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)).

The Court first considers the length of detention and likely duration of future detention. The total length of detention to date is considered the most important factor. *Id.* To date, Mr. Komarov has been in detention for almost nine months. Courts have found detentions of similar and shorter duration without a bond hearing weigh toward a finding that they are unreasonable. *See, e.g.*, *Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) (nearly nine months); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (over seven months); *Brissett v. Decker*, 324 F. Supp. 3d 444, 452 (S.D.N.Y. 2018) (over nine months). Therefore, the Court finds the length of detention weighs in favor of Mr. Komarov. Mr. Komarov's future detention can last several more months or even years during the adjudication of his appeal to the BIA and if unfavorable, his appeal to the Ninth Circuit. *See Banda*, 385 F. Supp. 3d at 1119 (finding an appeal to the BIA and subsequent judicial review "may take up to two years or longer"). The Court finds the duration of future detention weighs in favor of Mr. Komarov.

In considering the conditions of detention, "[t]he more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (second alteration in original) (citation omitted). Mr. Komarov is detained at Otay Mesa Detention Center, which courts have found to be "indistinguishable from penal confinement." *Kydyrali*, 499 F. Supp. 3d at 773 (citation omitted); *Gao v. LaRose*, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025). The Court finds this factor weighs in favor of Mr. Komarov.

The fourth and fifth factors concern delays in the removal proceedings caused by Mr. Komarov or the government. The Court finds no showing that either side has caused undue delays, so these factors are neutral.

In considering the "likelihood that the removal proceedings will result in a final order of removal," the Court considers "whether the noncitizen has asserted any defenses to removal." *Banda*, 385 F. Supp. at 1120 (citations omitted). "[W]here a noncitizen has

asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (citing *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018)). An immigration judge denied Mr. Komarov's asylum application, but it is currently pending on appeal. With no knowledge of the merits of the asylum application, the Court finds this factor is neutral.

Considering all the factors, the Court finds Mr. Komarov's mandatory detention under § 1225(b) has become unreasonable and that due process requires that he be provided with a bond hearing. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) ("[W]e note that the discretionary parole system available to § 1225(b) detainees is not sufficient to overcome the constitutional concerns raised by prolonged mandatory detention.").

Mr. Komarov contends that the Court should consider immediate release, a bond hearing in district court, or a bond hearing with additional safeguards because immigration judges' neutrality has been compromised. Pet. at 10–18.

The Court finds it appropriate for the government to provide Mr. Komarov with a bond hearing that includes certain procedural safeguards. At the bond hearing before a neutral immigration judge, the government "must justify his continued detention by a showing of clear and convincing evidence that [Mr. Komarov] would likely flee or pose a danger to the community if released." *Gao*, 805 F. Supp. 3d at 1112 (citations omitted); *Martinez v. Clark*, 124 F.4th 775, 786 (9th Cir. 2024) (noting that due process requires "the government to prove dangerousness or risk of flight by clear and convincing evidence" at a bond hearing for noncitizens subject to prolonged detention (citing *Singh v. Holder*, 638 F.3d 1196, 1200, 1205 (9th Cir. 2011))). Immigration courts must make a contemporaneous record of bond hearings, which can be an audio recording. *Martinez*, 124 F.4th at 786 (citing *Singh*, 638 F.3d at 1200). Additionally, if the immigration judge finds that bond is appropriate, then he or she must consider the detainee's financial circumstances and possible alternative release conditions. *Hernandez v. Sessions*, 872 F.3d 976, 990–91 (9th Cir. 2017).

Accordingly, the Court **GRANTS** the Amended Petition.

## IV. CONCLUSION

For the reasons set forth above, the Court **ORDERS**:

1. Mr. Komarov's Amended Petition for Writ of Habeas Corpus is **GRANTED**.

2. The government shall provide Mr. Komarov with an individualized bond hearing before an immigration judge within **<u>ten (10) days</u>** of the date of this order, unless Mr. Komarov requests a continuance.

   a. At the hearing, the government **SHALL BEAR** the burden of establishing by clear and convincing evidence that Mr. Komarov would likely flee or pose a danger to the community if released, while further specifying that concerns about interrupting court schedules is not a ground to deny bond.

   b. The immigration judge **SHALL** consider alternative conditions of release and Mr. Komarov's ability to pay bond if he or she determines bond is appropriate.

   c. If requested by Mr. Komarov, the government **SHALL** assist him in obtaining the audio recording of the bond hearing.

3. The Clerk of Court shall enter judgment in Mr. Komarov's favor and close this case.

**IT IS SO ORDERED**.

Dated: August 10, 2026

Honorable Linda Lopez
United States District Judge